UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


SANDRA LYNN TAYLOR,

    **Plaintiff,**

v.                                          Case No. 8:08-cv-550-T-TBM

**MICHAEL J. ASTRUE,**
**Commissioner of the United States**
**Social Security Administration,**

    **Defendant.**
_____/


## **O R D E R**

The Plaintiff seeks judicial review of the denial of her claim for Social Security disability benefits and Supplemental Security Income payments. For the reasons set out herein, the decision is affirmed.


I.

Plaintiff was forty-eight (48) years of age at the time of her administrative hearing in October 2007. She stands 5' 6 ½" tall and weighed 123 pounds. Plaintiff has a B.S. degree in occupational therapy. Her past relevant work was in sales, and as a model, a loan manager, and owner/manager of a company. Between 1983 and 1996, she received disability benefits due to neck and lower back problems.[1] Plaintiff applied for disability benefits and

---

    [1]The record contains different end dates for these benefits.

Supplemental Security Income payments in March 2005, alleging disability as of December 15, 2004, by reason of neck and back pain, pain in joints, and headaches. The Plaintiff's applications were denied originally and on reconsideration.

The Plaintiff, at her request, then received a *de novo* hearing before an Administrative Law Judge ("ALJ"). The Plaintiff was represented at the hearing by counsel and testified in her own behalf. Additionally, a vocational expert was called by the ALJ.

Plaintiff testified that she is no longer able to work at any job because of pain throughout most of her body. Between 1983 and 1993, Plaintiff received disability benefits because of problems associated with neck and back pain. Initially, she outlined her employment history subsequent thereto and indicated that ultimately she could not work because of the combined effect of this pain and other pain throughout her body. By her account, in 2005, she began to experience severe pain in her hands and feet. For instance, when lying down, her heels would begin burning so bad that it would wake her up. She was diagnosed thereafter with fibromyalgia and now experiences pain in her hands, wrists, feet, ankles, and shoulders. She also suffers from arthritis, and she has had multiple surgeries on her left knee.

According to Plaintiff, she no longer drives. On a good day, she can lift approximately eight pounds. On a bad day, she cannot even lift a pitcher of water from the refrigerator. She has to use both hands to pour herself a glass of water. On some bad days, she cannot even write. She estimates that she can stand for twenty to thirty minutes on a good day. On a bad day, she does not attempt to stand at all and will simply remain in a chair all

2

day. As for walking, she estimates she uses an assistive device, usually a cane, 85% of the time. She estimates she can walk for fifteen minutes on a good day, but on a bad day she can only walk for two minutes. The functional limitations in her hands vary. She experiences cramps and aching pain in both on occasion. She uses ice for relief of this condition.

She testified that she takes methadone four time a day for her pain. She also is prescribed a muscle relaxant and medication for her high blood pressure. Additionally, she receives steroid injections four times a year. As for side-effects, the methadone makes her tired, and if she is also taking a muscle relaxant, the combination knocks her out for a couple of hours. She estimates this occurs three to four times a week. (R. 367-77).

Next, the ALJ took testimony from Gerald Wili, a vocational expert (hereinafter "VE"). Upon an assumption of an individual of Plaintiff's age, education, and work experience capable of performing light exertional work, with an unlimited ability to push/pull both hand and foot controls, with occasional postural limitations, but no limitations for manipulative, visual, communicative, or environmental issues, the VE testified that such individual could perform all of Plaintiff's past work with the exception of her job as a sales representative for a securities system company which involved medium exertional work. On the other hand, if it was assumed that Plaintiff's testimony was entirely credible, then such person could not perform her past work or any other work existing in the local and national economy. (R. 377-79).

Also before the ALJ were medical records outlining the Plaintiff's medical history. These matters are addressed adequately by the parties' memoranda and are set forth herein as necessary.

By his decision of November 30, 2007, the ALJ determined that while Plaintiff has severe impairments related to degenerative disc disease, asthma, and polyarthralgias, she nonetheless had the residual functional capacity to perform light exertional work with certain postural limitations. Upon this finding, the ALJ concluded that Plaintiff could perform her past work as a model, sales manager, mortgage loan originator, office manager and sales clerk. Upon this conclusion, the Plaintiff was determined to be not disabled. (R. 9-15). The Appeals Council denied Plaintiff's request for review.

II.

In order to be entitled to Social Security disability benefits and Supplemental Security Income payments, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment," under the terms of the Act, is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See id.* at § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. *Celebrezze v. O'Brient*, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. *Miles*, 84 F.3d at 1400; *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).

III.

The Plaintiff raises three claims on this appeal. As stated by the Plaintiff, they are as follows:

(1) The ALJ failed to properly develop the record by failing to pose a hypothetical question to the VE which comprehensively described her impairments;

(2) The ALJ failed to properly consider Claimant's subjective complaints including pain; and

(3) The ALJ failed to properly evaluate all of the Claimant's allegations of pain due to fibromyalgia.

Since Plaintiff's first claim depends in large part on how the ALJ addressed her subjective complaints, I begin with Plaintiff's second and third claims. By those claims, Plaintiff complains the ALJ failed to properly assess her subjective complaints. More particularly, the Plaintiff asserts the ALJ's bases for rejecting her subjective testimony are not only inaccurate but unsupported by the medical evidence. She also complains that the ALJ failed to assign any physical limitations due to pain from her fibromyalgia. Not only did the ALJ fail to account for the objective findings reflected in her treating doctors' records and

opinions, but he wholly failed to even discuss her fibromyalgia as a severe impairment. The failure of the ALJ to consider and evaluate Plaintiff's fibromyalgia was clear error requiring a remand.

In response, the Commissioner notes that the ALJ properly credited Plaintiff with impairments which could give rise to her subjective complaints, but not to the extent claimed. In support, the ALJ cited her medical record which revealed generally normal findings and no limitations on Plaintiff's ability to lift, stand, sit or walk. As for her fibromyalgia, the Commissioner notes that it is not clear whether each of Plaintiff's doctors diagnosed the condition, although such is reflected in clinical notes, but in any event, Plaintiff fails to identify functional limitations from such condition not considered by the ALJ.

In this circuit, subjective complaints such as pain, fatigue or dizziness are governed by a three-part "pain standard" that applies when a claimant attempts to establish disability through subjective symptoms. By this standard, there must be evidence of an underlying medical condition and either objective medical evidence that confirms the severity of the alleged symptom arising from the condition or evidence that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)). A claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Id.*; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). If the ALJ determines not to credit subjective testimony, he must articulate explicit and adequate reasons for his

decision. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). The failure of the ALJ to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *See Hale*, 831 F.2d at 1012. Proper application of the regulatory standard will satisfy this circuit's pain standard. *See Wilson v. Barnhart,* 284 F.3d 1219, 1226 (11th Cir. 2002).

Initially, although I find no error in the ALJ's use of "polyarthralgias" in lieu of "fibromyalgia," to describe Plaintiff's multi-joint pain condition, I conclude that even if such was error, the error was harmless at best. Here, Plaintiff's medical records reflect impressions or diagnoses for both polyarthralgias and fibromyalgia in connection with the pain condition in Plaintiff's hands, wrists, elbows, ankles, feet and shoulders. Thus, as described by Dr. Farrukh Zaidi, M.D., Plaintiff suffered "small joint polyarthralgias." (R. 226, 234).[2] In notes from providers at Access Health Care, her complaints are variously described as "multi-joint pain" or "polyarthralgias" or "fibromyalgia." (R. 189-212). On my reading, this is not a situation where the ALJ ignored or misunderstood the impairment. Instead, he chose to describe it in the terms used by Dr. Zaidi. As the Commissioner notes, in any event, the mere diagnosis of a condition itself is alone not a basis for disability. Whether Plaintiff's small joint pain complaints were better described as fibromyalgia or not, Plaintiff's claim turns not

---

[2]Dr. Zaidi noted in November 2005, that Plaintiff's condition was "beginning to look more like an inflammatory arthritis given small joint arthralgias . . ." (R. 225).

8

on the diagnosis but on whether the objective and clinical records of this condition dictated that the ALJ find a reduced residual functional capacity that left Plaintiff disabled from all work. For the reasons which follow, I conclude that it did not.

Concerning her claims of disabling pain, the decision reflects that the ALJ discounted Plaintiff's pain complaints as follows.

> The undersigned considered the claimant's testimony, and finds it is not supported by the evidence of record. The claimant's level of treatment has been low. She is seen on an infrequent basis. While her providers reflect her complaints of pain, her rheumatologist's notes reflect much better response to the steroid injections than suggested by the claimant's testimony. No provider has prescribed an assistive device, or even noted the claimant's use of such device. No provider has noted the muscle weakness she describes. Objective tests reveal only moderate degeneration at one level of the spine, with only mild findings at other levels. X-rays of the other joints have been normal. The claimant has not submitted any documentation of her knee procedure, the claimant returned to work for many years and has not sought out additional treatment for knee pain. Overall, the objective evidence of record and the subjective findings recorded by the claimant's providers do not suggest the degree of limitation that the claimant testified to.

(R. 14). Initially, Plaintiff is correct that the ALJ erred when he stated that no provider had even noted the *use* of an assistive device.[3] While there was no evidence that a medical provider prescribed an assistive device, Plaintiff is correct that there is evidence in the record that she was observed using one. I also agree that Plaintiff's course of treatment was not insignificant. However, the balance of the stated reasons offered by the ALJ are fairly

---

[3]The Commissioner concedes that the ALJ was incorrect in concluding that no doctor had even noted Plaintiff's use of an assistive device, but he otherwise rejects that Plaintiff's claim that she needed such device to walk or stand was supported by the medical record.

supported by the medical record. Neither the objective evidence nor the clinical findings of record supported the level of pain and limitations claimed by the Plaintiff. Objective reports such as that from Dr. Kumar reported no evidence of inflammatory or degenerative arthropathy in the hands. Dr. Manhoff reported that Plaintiff's spine showed moderate scoliosis, with mild degenerative disc disease throughout except at L5-S1 where he described it as moderate. Clinical findings by Dr. Allam Reheem, M.D., indicated some reduced range of motion in the cervical and lumbar spine but no loss of strength, no sensory deficits and no focal deficits. His reports also suggest that Plaintiff's pain was reasonably controlled with medication. Similarly, Dr. Zaidi's clinical findings reflected some "bogginess" in the hands, but otherwise his findings related to the hands, wrists, shoulders, hips, and ankles revealed no tenderness and full range of motion. He noted crepitus in the knees, but no effusion and full flexion. While this doctor suspected developing inflammatory arthritis, he reported that her "labs" were normal. Neither Dr. Zaidi nor Dr. Reheem prescribed any significant functional limitations. As the ALJ noted, the record reveals little else about her knees. Thus, while I do not agree with all the reasons stated by the ALJ, a review of the medical record supports much of what he relied upon to discount Plaintiff's credibility. In the face of such record, the ALJ could conclude that Plaintiff was overstating her subjective symptoms. As noted above, the ALJ may discount a claimant's subjective testimony by articulating explicit reasons for doing so. Here, I find the ALJ has adequately set forth sufficient reasons from the medical record to satisfy this standard.

Plaintiff also argues that in light of the later reports from Drs. Zaidi, Reheem, and Singh reflecting inflammatory disease and fibromyalgia, the ALJ erred in relying on the October 2005, residual functional capacity ("RFC") assessment by Dr. Ronald S. Kline, M.D. Plaintiff argues that since the assessment by this nonexamining doctor was completed without the benefit of any of Dr. Zaidi's or Dr. Reheem's medical reports submitted in 2006, and without Dr. Singh's treatment notes after October 2005, the RFC assessment by Dr. Kline was incomplete and less than accurate. In particular, she notes that the additional diagnoses of inflammatory disease and fibromyalgia and symptoms of pain therefrom would unquestionably call for the need of a sit/stand option and reflect the inability to lift or raise the arms overhead, and an inability to walk or stand without an assisted device. Plaintiff urges that had the ALJ posed an accurate hypothetical, inclusive of these additional limitations, his testimony would have been that Plaintiff was unable to work.

In response, the Commissioner urges that at no time did Drs. Zaidi or Reheem ever indicate that Plaintiff had greater limitations than those found by Dr. Kline. On the contrary, their records supported no greater limitations than those cited by the ALJ. As for Plaintiff's contention that the hypothetical questions should have included limitations for a sit/stand option, no overhead lifting or reaching, and an inability to stand or walk without an assistive device, the Commissioner urges that such limitations are the product of counsel's advocacy and not the medical record.

In this circuit, when the ALJ calls on a VE to assist in the vocational decision, he or she must employ hypothetical questions which are accurate and supportable on the record and

11

which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). However, the ALJ need not include findings in the hypothetical that are not supported by the evidence. *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004). Here, the decision does reflect that the ALJ gave controlling weight to the RFC assessment of Dr. Kline, a nonexamining doctor. However, this was done on the ALJ's conclusion that the doctor's assessment was consistent with the level of treatment and objective evidence from the treating doctors and the finding that none of these treating doctors had placed any functional limitations on Plaintiff's ability to work or on her daily activities. Plaintiff suggests that the medical record after Dr. Kline's assessment called for greater limitations and a hypothetical question for the VE which assumed a more restrictive functional capacity. However, by my review of these records, that is simply not the case. Here again, because the Plaintiff cannot demonstrate from her medical record that her RFC was as restricted as she claims, she is not entitled to relief on this claim.

Upon my review, the later records reveal little that was not already available to the non-examining doctors. The notes reflect continued complaints of joint, back and neck pain and reflect more than once that Plaintiff wore a soft collar for neck spasm, but the notes nowhere reveal any worsening of her condition or the suggestion of greater functional limitations. Once again, there are no functional restrictions imposed by the later reports from these treating doctors. Significantly, Plaintiff fails to specifically demonstrate how the later medical record "unquestionably" supports her need for a sit/stand option or her inability to lift or raise her arms over her head. Similarly, she points to no medical evidence of an inability to

walk or stand without an assistive device. By my consideration, the findings in these later records, such as they are, do not dictate that the ALJ was obliged to impose additional limitations or include the same in his questioning of the VE. Plaintiff is not entitled to relief on this claim.[4]

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence. The decision is affirmed. Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 24th day of March 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record

---

[4] While the burden of asking complete and accurate hypothetical questions falls on the ALJ, counsel may share some of the blame where, as here, they are afforded the opportunity to question the VE and elect not to do so. If counsel truly believed additional limitations were called for, she should have clarified or expanded on the ALJ's questions or posed her own hypothetical.

13